**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DONNA H.,

        **Plaintiff,**

    v.                                **Civil Action 3:25-cv-77**
                                          **Judge Michael J. Newman**
                                        **Magistrate Judge Chelsey M. Vascura**

COMMISSIONER OF SOCIAL
SECURITY,

        **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Donna H. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income benefits ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.      BACKGROUND

Plaintiff filed her SSI application in July 2022, alleging that she became disabled beginning August 15, 2020. (R. at 214–220.) After Plaintiff's application was denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on October 25, 2023, at which Plaintiff, who was represented by counsel, appeared and testified. A vocational expert ("VE") also appeared and testified. On March 13, 2024, the ALJ issued an

unfavorable determination, which became final on February 18, 2025, when the Appeals Council declined review. (R. at 10–23, 1–6.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ reversibly erred by failing to adequately develop the record about her mental health limits and when evaluating prior administrative findings about her mental and physical impairments. (Pl.'s Statement of Errors 4–6, 6–8, ECF No. 12.)

## II.    THE ALJ'S DECISION

The ALJ issued the unfavorable determination on March 13, 2024. (R. at 10–23.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since her July 11, 2022 application date. (*Id*. at 12.) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments:

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

arthropathies; degenerative joint disease; carpal tunnel syndrome; migraines; hypertension; and post-traumatic stress disorder (PTSD). (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 13.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the following: I find that the claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. She is able to stand and/or walk for a total of about 6 out of 8 hours. She is able to sit for a total of about 6 out of 8 hours. The claimant can occasionally climb ramps and stairs, and she can occasionally stoop, balance and crouch, but she can never kneel, crawl, or climb ladders, ropes or scaffolds. She can reach overhead or to the side no more than occasionally. The claimant can perform fine and gross manipulation frequently but not constantly. She is not capable of working where she would be exposed to excessive noise or bright, flashing lights exceeding levels generally encountered in office-type work environments. The claimant should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery. The claimant can understand, remember and carry out simple instructions. The claimant can use judgment to make simple work-related decisions. The claimant can tolerate occasional interactions with supervisors and coworkers. The claimant can tolerate no interactions with the general public. The claimant cannot perform work requiring a specific production rate such as assembly line work, but can tolerate end of day quotas. The claimant can deal with occasional changes in a routine work setting.

(*Id.* at 16.)

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 22.) Relying on the VE's testimony, at step five, the ALJ determined that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

national economy that Plaintiff could perform including the representative jobs of office helper, mail clerk, and router. (*Id.* at 23.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id.*)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a

substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.     ANALYSIS

As explained above, Plaintiff contends that the ALJ committed reversible error by failing to adequately develop the record about her mental health issues and when evaluating prior administrative findings about her mental and physical impairments. (Pl.'s Statement of Errors 4–6, 6–8, ECF No. 12.) The undersigned considers each contention in turn and concludes that they both lack merit.

### A.     Failure to Develop the Record About Plaintiff's Mental Health Impairments

Plaintiff first contends that the ALJ reversibly erred by failing to adequately develop the record of her mental health impairments. (Pl.'s Statement of Errors 4–6, ECF No. 12.) This contention lacks merit.

A plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 545 (6th Cir. 2007). But an ALJ bears the burden of developing the administrative record upon which a disability determination rests. *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir. 1983). An ALJ has a duty to develop the record because "[s]ocial security proceedings—unlike judicial ones—are inquisitorial, not adversarial." *Chester v. Comm'r of Soc. Sec.*, No. 11-1535, 2013 WL 1122571, at *8 (E.D. Mich. Feb. 25, 2013); *see also, Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate facts and develop the arguments both for and against granting benefits.").

5

An ALJ is not required to base his RFC determination on a medical opinion.[3] *Mokbel-Aljani v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."). *See also Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (explaining that requiring an ALJ to base an RFC determination on medical opinions would transfer the statutory responsibility to determine if an individual is under a disability from an ALJ to a medical source). Nor does an ALJ err by relying on medical opinions from physicians who have reviewed an incomplete record if the ALJ considers later evidence and adequately accounts for changes in a claimant's conditions. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding no error where an ALJ relied on opinions from state agency reviewers where the ALJ considered later evidence and accounted for relevant changes in the plaintiff's condition).

Even so, pursuant to the so-called *Deskin* rule, an ALJ must obtain opinion evidence to satisfy the duty to develop the record in at least two circumstances. *See Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008). One circumstance arises when an ALJ is required to make medical judgments about a claimant's functional abilities by interpreting raw medical data. *Gonzalez v. Comm'r of Soc. Sec.*, 3:21-cv-000093-CEH, 2022 WL 824145, at *8 (N.D. Ohio Mar. 18, 2022) (citing *Alexander v. Kijakazi*, No. 1:20-cv-01549, 2021 WL 4459700, at *9 (N.D. Ohio Sept. 29, 2021) ("Courts are generally unqualified to interpret raw medical data and make medical judgments concerning limitations that may reasonably be expected to accompany such

---

[3] State agency reviewers' functional assessments are now referred to as "prior administrative findings" rather than "medical opinions." 20 C.F.R. §§ 404.1513(a)(1)–(5), 416.913(a)(1)–(5). Given prior case law, developed when the term "medical opinion" included opinions from medical sources and functional assessments from state agency reviewers, the undersigned sometimes uses both terms interchangeably for ease of reference.

data.") and *Mascaro v. Colvin*, No. 1:16CV0436, 2016 WL 7383796, at *11 (N.D. Ohio Dec. 1, 2016) (noting neither the ALJ nor the court had the medical expertise to conclude whether the results of a neurological exam necessarily ruled out the existence of a disabling condition)), *adopt and aff'd*, 2016 WL 7368676 (N.D. Ohio Dec. 20, 2016). This circumstance can arise when the record lacks any medical opinion evidence. *See Gonzalez*, 2022 WL 824145, at *7 (citing *Kizys v. Comm'r of Soc. Sec.*, No. 3:10 CV 25, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011)).

Second, a medical opinion must also be obtained when "a 'critical body' of the 'objective medical evidence' is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions." *Gonzalez*, 2022 WL 824145, at *8 (quoting *McCauley v. Comm'r of Soc. Sec.*, No. 3:20-cv-13069, 2021 WL 5871527, at *14–15 (E.D. Mich. Nov. 17, 2021) (cleaned up)). In such circumstances, an ALJ should obtain opinion evidence that accounts for the entirety of the relevant period. *Id*. That obligation exists unless the medical evidence shows "relatively little physical impairment" and an ALJ "can render a commonsense judgment about functional capacity." *Kizys*, 2011 WL 5024866, at *2 (quoting *Deskin*, 605 F.Supp.2d at 912 (N.D. Ohio 2008) (cleaned up)).

Neither circumstance is present here. First, this is not a case where the record lacks medical opinions or prior administrative findings from state agency reviewers. Although Plaintiff never alleged disabling mental health impairments, when her file was reviewed for physical impairments in November 2022, it was noted that the records suggested that she had a history of anxiety and depression. (R. at 262, 82.) Plaintiff's authorized representative was also noted to be nonresponsive, and therefore, a medical determination could not be made at that time. (*Id*. at 82.)

7

During the April 2023 reconsideration, however, Plaintiff's representative made it known that Plaintiff had not received any mental health treatment until she began treating with Omni Wellness Group ("Omni") in January 2023, and that she had been treating there twice a week since. (*Id*. at 93, 92.) The state-agency reconsideration reviewer summarized Plaintiff's January and February 2023 treatment records from Omni before finding that Plaintiff had only mild limits in the paragraph B criteria. (*Id*. at 93.) The reviewer also wrote as follows:

> Conclusion: while [plaintiff] did not formally allege mental impairments in [her disability benefit applications], she has intermittently reported mood/anxiety [symptoms] to various non-psych providers but with no ongoing psych treatments until recently when she sought outpatient psych [treatment] for ptsd, mood, anxiety [symptoms]. Her [mental status examinations] have been benign as detailed above. The [medical evidence of record] does not document any acute or gradual psych decompensations despite lack of consistent treatment. Current [mental status examination] was entirely benign. Her [activities of daily living] have a good range and she cares for her children and grandchildren, cooks, does some [household] chores, drives, shops, manages finances. It is expected that with [plaintiff] now pursuing treatment, her psychiatric [symptoms] would become even better attenuated with a stable course.

(*Id*. at 93–94.)

The ALJ considered those findings and determined that they were only partly persuasive. (*Id*. at 20.) That does not, however, trigger first *Deskin* circumstance. "[A] case where an ALJ finds a prior administrative finding to be only partially persuasive is distinct from one in which no prior administrative finding exists in the record." *Chelsea R. M. v. Comm'r of Soc. Sec*., No. 2:24-CV-499, 2025 WL 758158, at *4 (S.D. Ohio Mar. 11, 2025) (citing *Brewer v. Comm'r of Soc. Sec*., No. 2:24-cv-499, 2025 WL 758158, at *13 (N.D. Ohio Mar. 12, 2024) *adopted and aff'd*, 2024 WL 1676856 (N.D. Ohio Apr. 18, 2024))). Moreover, and as explained below, the ALJ's determination was more favorable to Plaintiff. The reviewer found only mild impairments, but the ALJ discounted that finding and determined that Plaintiff had moderate impairments that resulted in limits that he included in her RFC.

Second, the undersigned is not persuaded that the record contains a critical body of evidence that was unaccounted for by a medical opinion, coupled with significant proof of potentially disabling conditions. Plaintiff correctly notes that additional evidence was added to the record after the state agency reviewer's April 2023 findings. Specifically, at the October 2024, hearing, the ALJ held the record open for Plaintiff to submit additional evidence. (R. at 41–42.) But no new evidence from Omni, or any other mental health treatment provider was submitted. Instead, additional documents from Plaintiff's physical treatments at Miami Valley Hospital were submitted. (*Id*. at 1978–2050.) Plaintiff does not, however, identify any crucial information about her mental health conditions in these newer records or show that they contain significant details demonstrating potentially disabling conditions. Nor has the undersigned independently identified any such information in those documents.

In short, *Deskin* describes two narrow circumstances where the record may establish that an ALJ has a duty to further develop the record. Neither are present here—the record contained prior administrative findings, and Plaintiff has failed to demonstrate that a critical body of objective medical evidence was unaccounted for by them. Accordingly, Plaintiff's first contention of error is not well taken.

### B.     The ALJ's Evaluation of Prior Administrative Findings

Plaintiff next contends that the ALJ reversibly erred when evaluating the state agency reviewers' prior administrative findings about her mental and physical impairment. This contention also lacks merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering those categories of evidence: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And even though an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.*

### 1.    Mental Health Impairments

As explained, even though Plaintiff did not allege disabling mental impairments in her SSI application, state agency reviewing psychologists reviewed her file. (R. at 262.) The ALJ summarized those findings and determined that they were not persuasive, writing as follows:

> The opinion of the Disability Determination Service (DDS), at the initial level (Exhibit 1A), found no mental limitations which was not persuasive. At the reconsideration level (Exhibit 4A), the DDS found a mild limitation in

---

[4] Because Plaintiff's application was filed in 2022, it is subject to regulations governing applications filed after March 27, 2017.

understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting or managing oneself. Such opinion was not persuasive.

(*Id*. at 20.) The ALJ explained that these findings were not persuasive because "[a]dditional evidence was submitted at the hearing level which was not available to the DDS which showed ongoing treatment for mental health." (*Id*.) The ALJ additionally wrote:

The claimant's mental impairments were considered in the above residual functional capacity (RFC) with the following: The claimant can understand, remember and carry out simple instructions. The claimant can use judgment to make simple work-related decisions. The claimant can tolerate occasional interactions with supervisors and coworkers. The claimant can tolerate no interactions with the general public. The claimant cannot perform work requiring a specific production rate such as assembly line work, but can tolerate end of day quotas. The claimant can deal with occasional changes in a routine work setting.

(*Id*.)

The ALJ's discussion did not strictly comply with the regulations. First, the ALJ discounted the reviewers' findings because additional evidence about Plaintiff's mental health treatment was submitted after they were made. But that is only partially correct. To be sure, the initial reviewer did not have access to January and February 2023 treatment records from Omni. But that evidence was available to the reconsideration reviewer who reviewed and summarized it. (*Id*. at 92, 93.) Additional medical evidence was also submitted after the reconsideration review, but it consisted of Plaintiff's hearing testimony and 73 pages of documents from Miami Valley Hospital, neither of which included information about Plaintiff's mental health conditions or treatment. (*Id*. at 36–75, 1978–2050.) Therefore, the ALJ's reasons for discounting the reviewers' findings only applied to the initial reviewer and not the reconsideration reviewer.

Nevertheless, reversal is not required. Federal courts generally review decisions of administrative agencies for harmless error. *Rabbers*, 582 F.3d at 654–55. Accordingly, "an

11

agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Connor v. United States Civ. Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983). Here, Plaintiff cannot show any prejudice because the ALJ found that she was more limited than either of the state agency reviewing psychologists did. *See Kristen H. v. Comm'r of Soc. Sec.*, No. 3:23-CV-199, 2024 WL 3429896, at \*4 (S.D. Ohio July 16, 2024) (finding that a plaintiff could not credibly complain that an ALJ erred by discounting an opinion because it was not restrictive enough), *adopted and aff'd*, 2024 WL 4266500 (S.D. Ohio Sept. 23, 2024); *Putnum v. Comm'r of Soc. Sec.*, No. 2:20-CV-3895, 2021 WL 2700330, at \*5 (S.D. Ohio July 1, 2021) (explaining that "[a]n ALJ does not commit reversible error when discounting a medical opinion or an administrative finding because the ALJ determines that a claimant is more limited than opined"); *Laney v. Comm'r of Soc. Sec.*, No. 5:21-CV-01290-CEH, 2022 WL 2176539, at \*7 (N.D. Ohio June 16, 2022) ("The Court will not fault the ALJ for finding more restrictions than the state agency reviewers opined.") Therefore, even if the ALJ's explanation for discounting the reviewers' findings only applied to the initial reviewer's findings, it is only harmless error.

In addition, the ALJ did not discuss the supportability and consistency factors. The Sixth Circuit Court of Appeals has not addressed when an ALJ's failure to articulate the supportability and consistency factors is harmless. District Courts sitting in the Sixth Circuit have held, however, that such an error can be excused as harmless where: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with it, or (3) the goal of the regulation was otherwise met. *See e.g.*, *Wilson C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00457, 2022 WL 4244215, at \*6–7 (S.D. Ohio Sept. 15, 2022); *Burba v.*

12

*Comm'r of Soc. Sec.*, No. 1:19-CV-905, 2020 WL 5792621, at *4 (N.D. Ohio Sept. 29, 2020);

*Oliver v. Kijakazi*, No. 3:22-CV-28-DCP, 2023 WL 2587487, at *5 (E.D. Tenn. Mar. 21, 2023);

*Nicholas E. v. Bisignano*, No. 4:25-CV-00002-HBB, 2025 WL 2054367, at *4 (W.D. Ky. July

22, 2025).

This case relates to the second scenario. As explained, the state agency reviewers found

that Plaintiff had no more than mild impairments in three areas. (R. at 82, 93.) In contrast, the

ALJ determined that Plaintiff had moderate impairments in four areas and that they caused

functional limits that were incorporated into Plaintiff's RFC. (*Id*. at 20.) If an ALJ's failure to

articulate the regulatory factors is harmless error when an ALJ adopts the same or similar limits

as reviewers, it is also harmless when an ALJ assesses greater limits than reviewers. *See*

*Gwendolyn F.H. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-214, 2023 WL 5772796, at *4

(S.D. Ohio Sept. 7, 2023) (finding ALJ's lack of supportability discussion harmless; reviewers

found plaintiff capable of restricted range of light work, but ALJ determined she was limited to a

range of sedentary work). Accordingly, the ALJ's articulation error is harmless.

### 2. Physical Impairments

Similar reasoning applies to the ALJ's assessment of the findings from the state agency

reviewing physicians. The ALJ summarized those findings and determined that they were only

somewhat persuasive, writing as follows:

> The opinion of the DDS (Exhibit 1A; 4A), regarding physical and exertional limitations, found a light residual functional capacity (RFC) with lifting and carrying 20 pounds occasionally and 10 pounds frequently; and stand or walk for 6 hours and sit for 6 hours in an 8 hour workday. She has limited bilateral reaching in front and/or laterally and limited bilateral reaching overhead. She can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds. She can frequently kneel and crouch, and she can occasionally crawl. She should avoid concentrated exposure to noise and hazards. Such opinion was somewhat persuasive.

13

(R. at 21.) The ALJ explained that these findings were only somewhat persuasive because

"[a]dditional evidence was submitted at the hearing level which was not available to the DDS."

(*Id*.) The ALJ additionally wrote:

> I also found a light RFC with the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently as greater amounts can aggravate the pain and discomfort in the neck, back, shoulders, arms, elbows, wrists, hands and fingers as well as chest pain and shortness of breath, especially as she is obese which can place additional stress on the body. She is able to stand and/or walk for a total of about 6 out of 8 hours, and she is able to sit for a total of about 6 out of 8 hours. The claimant can occasionally climb ramps and stairs, and she can occasionally stoop, balance and crouch, but she can never kneel, crawl, or climb ladders, ropes or scaffolds as greater activity can aggravate the pain and discomfort in the back, neck, hips, buttocks, lower extremities, knees, ankles, feet, shoulders and, arms (when used to crawl and support arising from crouching or kneeling positions), especially as the claimant is obese which can place additional stress on the body. She can reach overhead or to the side no more than occasionally, and the claimant can perform fine and gross manipulation frequently but not constantly, and is incapable of forceful grasping or torqueing as greater activity can aggravate the pain and discomfort in the neck, back, shoulders, arms, elbows, wrists, hands and fingers as well as chest pain and shortness of breath, especially as she is obese which can place additional stress on the body. Due to her headaches, seizure like activity, and shortness of breath, she is not capable of working where she would be exposed to excessive noise or bright, flashing lights exceeding levels generally encountered in office-type work environments, and the claimant should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. Due to her headaches, seizure like activity, chest pain, shortness of breath, and chronic pain symptoms, the claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights, and she should avoid concentrated exposure to unguarded hazardous machinery.

(*Id*.)

The ALJ discounted these findings because additional evidence was submitted after they were made. That explanation is supported by substantial evidence because after the initial and reconsideration reviews, treatment records from Miami Valley Hospital were submitted. (*Id*. at 45–69, 41–42, 1978–2050.)

14

On the other hand, the ALJ did not expressly discuss the supportability and consistency factors. But once again, any articulation error here is harmless. The state agency reviewers found that Plaintiff could perform a range of light work. In contrast, the ALJ determined that Plaintiff was capable of an even more restricted range of light work. For example, the reviewers found that Plaintiff could frequently kneel and crouch and occasionally crawl, whereas the ALJ determined that she could never kneel, occasionally crouch, and never crawl. (R. at 84, 95, 21.) Likewise, the reviewers found that Plaintiff had no limits in stooping or balancing, but the ALJ determined that Plaintiff could do either only occasionally. (*Id.*) And while the reviewers found Plaintiff had a general reaching limit and no limits for handling, fingering, and feeling, the ALJ determined that Plaintiff could only occasionally reach and frequently perform fine and gross manipulations. (*Id.*)

Because the ALJ found Plaintiff more limited than the reviewers did, any articulation error is harmless. *Gwendolyn F.H.,* 2023 WL 5772796, at *4. Therefore, the undersigned cannot conclude that the ALJ committed reversible error when assessing any prior administrative findings from state agency reviewers.

## V.     RECOMMENDED DISPOSITION

Accordingly, for all the reasons contained herein, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

supporting authority for the objection(s). A District Judge of this Court shall make a *de novo*

determination of those portions of the Report or specified proposed findings or recommendations

to which objection is made. Upon proper objections, a District Judge of this Court may accept,

reject, or modify, in whole or in part, the findings or recommendations made herein, may receive

further evidence or may recommit this matter to the Magistrate Judge with instructions.  28

U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to have the District Judge review the Report

and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*  
CHELSEY M. VASCURA  
UNITED STATES MAGISTRATE JUDGE